# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| THOMAS M. MCDONALD, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>STEVEN C. PALACIOS, an individual, and SARAH NELSON, an individual,<br><br>    Defendants. | Case No. 2:09-CV-01470-KJD-PAL<br><br>**ORDER** |

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint (#11). Plaintiff has filed a response in opposition (#14), to which Defendant replied (#15).

**I. Background**

Plaintiff Thomas M. McDonald alleges that on August 7, 2006, he entered into an agreement with Defendant Steven C. Palacios to purchase 75% of the stock in various companies, ("Companies") identified in a purchase agreement.[1] In the same transaction, McDonald also

---

[1] The companies set forth in McDonald's Amended Complaint include: Mist Systems International, Inc.; MSI Landscaping, Inc.; MSI Companies, Inc.; Pure Osmosis, Incorporated; MSI

purchased a 100% ownership interest in Conrad Holdings, an entity that owns and leases real property. During negotiations, and in the purchase agreement, Palacios made numerous representations to McDonald regarding the financial stability of the Companies, and regarding the accuracy of the financial statements provided to McDonald. In making those representations, Palacios enlisted the help of Defendant Sarah Nelson, who was in charge of the Companies' bookkeeping prior to the time that McDonald and Palacios entered into the purchase agreement. Based on those representations, McDonald paid $2,925,000 for his stake in the Companies, and $2,500,000 for his ownership of Conrad Holdings. McDonald also became a director of MSI Companies, while Palacios was to be the President and run the day-to-day operations.

Between May 2007 and June 2008, Palacios expressed a need for capital infusions from McDonald in the form of loans to the Companies. Palacios told McDonald that this was necessary in order to complete certain unfinished projects and to bid on other projects. Palacios further represented to McDonald that the Companies would be profitable if McDonald were to provide these loans, and as a result McDonald loaned approximately $1,290,000 to the Companies during this time period. In addition, on May 21, 2007, MSI Companies obtained a loan from Nevada State Bank in the amount of $1,750,000. Both Palacios and McDonald guaranteed payment on the loan. Palacios, unlike McDonald, did not loan the Companies any money.

Unfortunately, it slowly became clear that the Companies were not nearly as profitable as McDonald had hoped. Some time after the purchase agreement had closed, Palacios admitted to McDonald that the Companies had not paid the prevailing wages required on jobs completed by the Companies in previous years. This had the effect of artificially inflating the apparent financial value of the Companies prior to the closing between Palacios and McDonald. Later, two of the Companies

---

Concrete Services, Inc.; MSI Masonry Services, Inc.; Sonoran Companies, Inc.; and Pacific Sun Nurseries, Inc.

defaulted on their leases to Conrad Holdings.[2] In May 2007, McDonald requested, and Palacios agreed, that a certified public accountant be appointed to monitor and complete the books for MSI Companies. In May 2008, the Companies requested a 90-day extension on the loan from Nevada State Bank, and eventually defaulted on that repayment obligation. On May 28, 2008, McDonald resigned as director of MSI Companies, having been repaid a mere $65,000 on the loans he provided to the Companies. Since that time, Palacios has stopped rendering services to and on behalf of the Companies, effectively abandoning his duties as President of MSI Companies.

On August 6, 2009, McDonald filed a Complaint against Palacios and Nelson (#1), and on September 24, 2009, filed an Amended Complaint (#4). McDonald seeks damages, alleging: (1) violations of Section 10b of the Securities Exchange Act of 1934; (2) violations of Nevada's blue sky laws under NRS 90.570; (3) civil conspiracy; (4) negligent misrepresentation; and (5) fraud. He also seeks a declaration by this Court that he has not been a stockholder in the Companies since May 28, 2008, that he owes no further obligations to Palacios under the purchase agreement, and that he owes no further obligations to Nevada State Bank as a guarantor of the loan given to MSI Companies.

In response, Palacios and Nelson filed the present Motion to Dismiss. Defendants assert: (1) that McDonald's federal securities fraud claim is barred by the applicable statute of limitations; and (2) that McDonald has failed to plead federal securities fraud with sufficient particularity. Finally, Defendants also assert, in the alternative, that the Court should abstain from hearing McDonald's case due to the existence of parallel proceedings in Nevada State Court.

**II. Standard for Motion to Dismiss**

In considering a Motion to Dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Generally, "[t]o survive a

---

[2] Conrad Holdings had entered into leases with two of the Companies. Pacific Sun Nurseries had leased property in Temecula, California, and Mist Systems International, Inc. had leased property in Las Vegas, Nevada. Both companies eventually defaulted on their payments.

1  motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a
2  claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing
3  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to
4  dismiss, means that the plaintiff has pled facts which allow "the court to draw the reasonable
5  inference that the defendant is liable for the misconduct alleged." Id.

6  Where a motion to dismiss is premised on an opposing party's failure to plead securities fraud
7  with sufficient particularity, the motion is governed by the Private Securities Litigation Reform Act
8  of 1995 ("PSLRA"), which Congress passed as a "check against abusive litigation by private
9  parties." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (2007). The PSLRA
10 requires that private litigants alleging misleading statements or omissions must satisfy two important
11 pleading requirements. First, the "complaint shall specify each statement alleged to have been
12 misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the
13 statement or omission is made on information and belief, the complaint shall state with particularity
14 all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). Second, "the complaint shall,
15 with respect to each act or omission alleged to violate [federal securities laws], state with
16 particularity facts giving rise to a strong inference that the defendant acted with the required state of
17 mind." 15 U.S.C. § 78u-4(b)(2).

18 The Supreme Court has indicated that in order to create a "strong inference," a pleading must
19 create an inference of scienter that is "more than merely plausible or reasonable–it must be cogent
20 and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 551 U.S. at
21 314. In drawing competing inferences from the Complaint, this Court must conduct a "holistic"
22 review of the allegations in the Complaint to determine whether they "combine to create a strong
23 inference of intentional conduct or deliberate recklessness." Zucco Partners v. Digimarc Corp., 552
24 F.3d 981, 992 (9th Cir. 2009). If McDonald's Complaint meets all of these requirements, then
25 Defendants' Motion to Dismiss must be denied.

26

4

### III. Motion to Dismiss Analysis

Defendants base their Motion to Dismiss on two separate grounds. First, Defendants argue that McDonald's claim is barred by the applicable statute of limitations. Second, Defendants argue that McDonald's Complaint fails to plead securities fraud with the requisite particularity. The Court finds Defendants' arguments unpersuasive on both grounds.

<u>A. Statute of Limitations</u>

Defendants argue that the applicable statute of limitations for securities fraud is the earlier of: (1) two years after the "discovery of the facts constituting the violation"; and (2) "within three years after such violation." (#11 at 7). However, Defendants' assertions are only partially correct. The statute of limitations regarding violations of securities laws were established by statute in the Sarbanes-Oxley Act of 2002 ("SOA"). The SOA provides that "a private right of action that involves a claim of fraud, deceit, manipulation or contrivance . . . concerning the securities laws . . . may be brought not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b). Defendants' arguments regarding a three-year statute of limitation are therefore misplaced. (See #11 at 7–8).

Defendants also claim, however, that McDonald has failed to bring his claim within two years after the discovery of Defendants' fraud. The statute of limitations for securities fraud begins to run when a plaintiff has "either actual or inquiry notice" that a defendant has made a fraudulent representation. <u>Betz v. Trainer Wortham & Co.</u>, 519 F.3d 863, 869 (9th Cir. 2008) (noting that ten other circuits have held that inquiry notice suffices to begin the statute of limitations on a securities fraud claim). The question of whether an individual has been put on inquiry notice "is objective," and "is triggered when the plaintiff receives 'sufficient storm warnings to alert a reasonable person to the probability that there were either misleading statements or significant omissions involved.'" <u>Id.</u> at 871 (citing <u>Newman v. Warnaco Group, Inc.</u>, 335 F.3d 187, 193 (2d Cir. 2003)). Once a party is put on inquiry notice, this Court must apply a "notice-plus-reasonable-diligence standard" and ask "when the investor, in the exercise of reasonable diligence, should have discovered the facts constituting the

5

alleged fraud." Betz, 519 F.3d at 870–71. At the time a prudent investor would have discovered the facts constituting the fraud, the statute of limitations begins to run. See id. at 871. Under the notice-plus-reasonable-diligence standard, "the defendant bears a considerable burden in demonstrating . . . that the plaintiff's claim is time-barred." Id. This burden is "especially pronounced where the plaintiff alleges that the defendants' reassurances convinced the plaintiff to postpone his or her legal action." Id. at 872.

In federal court, the statute of limitations is tolled upon the filing of the complaint, see Mann v. Am. Airlines, 324 F.3d 1088, 1090 (9th Cir. 2003). In this case, McDonald filed on August 6, 2009. (See #1 at 13). Defendants point to three occurrences prior to August 6, 2007 which they argue put McDonald on notice of fraud. First, some time after McDonald and Palacios had signed the purchase agreement, Palacios told McDonald for the first time that the Companies had not paid the prevailing wage that they were obligated to pay on prior jobs that had been completed.[3] (See #11 at 8–10). Second, Defendants point to the fact that the Companies were not profitable, and suffered financial losses from the time of the purchase agreement. (See #11 at 9). Third and finally, Defendants argue that because Palacios asked McDonald to provide capital, in the form of loans to the Companies, McDonald should have been aware that the Companies were not as profitable as they appeared at the time the purchase agreement was signed. (See #11 at 9).

The Court is not persuaded. The mere fact that Palacios informed McDonald of the Companies' failure to pay the prevailing wage on past projects did not put McDonald on inquiry notice that Palacios had committed fraud in his representations to McDonald in the purchase agreement. McDonald could have reasonably believed at the time that such an omission was a mere oversight by Palacios, and nothing in the pleadings suggest that such a conclusion would have been unreasonable. See Betz, 519 F.3d at 868 ("We have held that the statute of limitations for a federal

---

[3] It is not clear from the face of the Amended Complaint exactly when Palacios informed McDonald of this failure to pay the prevailing wage. (See #11 at 5). Nevertheless, because this Court finds that this was not sufficient to put McDonald on inquiry notice of fraud, it does not matter whether or not the statement was made prior to August 6, 2007.

6

securities claim begins to run when the plaintiff has either actual or inquiry notice that the defendants have made a fraudulent misrepresentation.") (emphasis added); Law v. Medco Research, 113 F.3d 781, 786 (7th Cir. 1997) ("In a fraud case, [the plaintiff] needs to know more: that the defendant has made a statement that was knowingly false. When the plaintiff knows or should know this, the statute of limitations begins to run.") (emphasis in original). At the very best for Defendants, this might have led McDonald to a "mere suspicion" that the Companies were not as profitable as he had hoped, see Betz, 519 F.3d at 871, but it does not rise to the level of storm warnings that would put a reasonable investor on notice of fraud. See, e.g., In re Am. Funds Secs. Litig., 556 F.Supp.2d 1100, 1105–10 (C.D. Cal. 2008) (finding sufficient notice of fraud where newspapers had reported on the defendants' possible fraud, where the SEC had issued enforcement orders against the defendants and issued press releases regarding the enforcement orders, and where there had been prior litigation by other parties for securities fraud with respect to the same actions by the defendants); Amnex, Inc. v. Rowland, 25 F.Supp.2d 238, 241–42 (S.D.N.Y. 1998) (finding sufficient notice where plaintiff had read an undisclosed letter from defendant indicating fraud, knew that the defendant had difficulties running the company because of legal and regulatory disputes, knew that the defendant was having serious problems with tax authorities, discovered that the company had lost customers prior to issuing securities to the plaintiff, and had spoken with the defendant's executives regarding the fraud).

      Defendants' arguments that the Companies operated at a loss, and that Palacios induced McDonald to give loans to the Companies (on the promise that the Companies would become profitable with an extra infusion of capital) are similarly insufficient to compel dismissal. Companies often need infusions of capital to cover the costs of operation and expansion. See, e.g., Andrew C. Spieler & Andrew S. Murray, Management Controlled Firms v. Owner Controlled Firms: A Historical Perspective of Ownership Concentration in the US, East Asia, and the EU, 7 J. Int'l Bus. & L. 49, 54–55 (2008) (discussing companies' needs for infusions of capital to expand their market positions). The need for a cash infusion to expand operations is therefore unremarkable. Moreover,

Palacios's reassurances to McDonald that the companies would become profitable with an infusion of capital make it less likely–not more–that McDonald was on sufficient notice of fraud. See Betz, 519 F.3d at 872. While McDonald was likely put on sufficient notice of fraud at some point during the parties' relationship, it is equally clear that he did not have such notice prior to August 6, 2007. McDonald has therefore timely filed within the applicable two-year statute of limitations.

### B. Failure to Plead Securities Fraud with Sufficient Particularity

In order to prove a violation of securities fraud, a plaintiff must allege five elements: "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." Zucco Partners v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009). Defendants argue that McDonald's allegations are "vague, ambiguous and conclusory,"(see #11 at 16), concluding that McDonald has not sufficiently pled the existence of the first two elements of his claim (see #11 at 11–17).

Defendants are mistaken on both grounds. McDonald has sufficiently pled several material misrepresentations and omissions made by Defendants. In Paragraph 8 of his Amended Complaint, McDonald sets forth specific representations made by Palacios: (1) that the financial statements given to McDonald accurately reflected the financial condition of the Companies; (2) that the financial statements given to McDonald accurately reflected information normally reported by the Companies to public accountants for financial statements and tax purposes; (3) that the financial statements had been prepared according to generally accepted accounting principles ("GAAP"); and (4) that the balance sheets accurately represented the financial position of the Companies. McDonald has alleged that these statements were false. (See #4 at 2–3). He has alleged that the financial statements were not prepared according to GAAP, (see #4 at 4), that Palacios and Nelson manipulated the Companies' financial records to make the Companies appear more profitable than they were, (see #4 at 5), and that Palacios and Nelson had manipulated the financial books and records of the Companies to cover up personal loans that MSI Companies had given to Palacios. (See

#4 at 5–6).[4] Other specific allegations appear in the Amended Complaint as well. (See #4 at 4–5) (alleging that Palacios and Nelson represented that accounts receivable on the balance sheets were substantially collectible in their full amounts); (#4 at 5) (indicating that Palacios and Nelson overstated the profitability of the company and concealed the actual risk that some projects would lose money); (#4 at 5) (indicating that Palacios had failed to tell McDonald that the companies had not paid the prevailing wage on prior projects, and that this omission misrepresented the financial condition of the Companies prior to closing); (#4 at 6–9) (indicating that Palacios represented to McDonald that an infusion of capital into the Companies would allow the Companies to become profitable, and that despite the infusion of capital, the Companies operated consistently at a loss). These allegations are easily sufficient to demonstrate the existence of material misrepresentations and omissions.

Defendants then fall back on the argument that McDonald has not sufficiently demonstrated scienter in his Amended Complaint. (See #11 at 17). This too is incorrect. McDonald has pled sufficient facts that, if true, create a strong inference that Palacios made material misrepresentations to McDonald intentionally or with deliberate recklessness in connection with the purchase of a security. As noted above, McDonald has specifically stated that Palacios represented that the Companies' financial statements were prepared in accordance with GAAP, that they accurately reflected the Companies' financial worth, and that these statements were false. (See #4 at 2–3, 5). McDonald has also included facts in his Amended Complaint indicating that Palacios was the prior owner of the Companies, (see #4 at 2–3), and that Nelson was the Companies' bookkeeper. (See #4 at 4). McDonald has also pled facts indicating that Palacios and Nelson intentionally manipulated the financial records of the Companies to make the accounts receivable from 2005 to appear as 2006

---

[4]Defendants make the strange argument that this does not affect the value of the Companies to McDonald. (See #11 at 17). This argument is unquestionably incorrect. Palacios, by manipulating the financial statements to hide his obligation to repay money to the Companies, deprived the Companies of an asset that they were entitled to. Palacios' actions would also have deprived McDonald of an opportunity to assess the risk that such a loan would not be repaid by Palacios. As a result, the value of the company was clearly affected by Palacios's actions in this regard.

income, (see #4 at 5), and that both Palacios and Nelson had incentives to misrepresent the value of the Companies to McDonald. (See #4 at 7) (indicating Palacios's financial incentives); (See #4 at 7–8) (indicating Nelson's romantic and professional incentives).

The Court takes the allegations of the Amended Complaint as true, and has considered the pleadings in the Amended Complaint holistically, as it is required to do. See Zucco Partners, 552 F.3d at 992. Having done so, the Court finds that the inference that Palacios and Nelson made material misrepresentations to McDonald intentionally or with deliberate recklessness at least as strong–and likely stronger–than the inference that Palacios and Nelson did not. Compare Rubke v. Capitol Bankcorp, 551 F.3d 1156, 1166 (9th Cir. 2009) (holding that the pleading standard for securities violations had not been met by pleadings indicating that the defendant had the mere "motive and opportunity" to commit fraud, where plaintiff had pled only that it was in defendant's financial interest to acquire shares of a company). McDonald has therefore created the "strong inference" of scienter required by the PSLRA to overcome a motion to dismiss. See Tellabs, Inc. v. Makor Issues and Rights, Ltd., 551 U.S. 308, 314 (2007).

**IV. Abstention**

Finally, Defendants argue that this Court should abstain from exercising its jurisdiction over McDonald's federal claims under the abstention doctrine set out in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). Defendants claim that there are three existing state court cases which would create the risk of piecemeal litigation were the Court to assert jurisdiction. (See #11 at 18–19).

Generally, abstention is "the exception, not the rule." Colorado River, 424 U.S. at 813. Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Id. (citing County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188 (1959)). In order for abstention to be appropriate under Colorado River, the Court must first find that there are parallel proceedings in state court. Parallel proceedings exist where state court proceedings and federal court proceedings are "substantially similar," taking into account the

10

1  substance of the litigation, the parties to the lawsuit, and whether the federal litigation "is but a spin-
2  off of more comprehensive state litigation." Nakash v. Marciano, 882 F.2d 1411, 1416–1417 (9th
3  Cir. 1989) (citations omitted).

4      Here, there are no state court proceedings that are "substantially similar" to the federal
5  litigation in this case. Defendants point to several lawsuits pending in Nevada State Court. The first
6  is a case in which McDonald, as a creditor, has sued to appoint a receiver for the Companies. (See
7  #11 at 18). That case, however, involves claims by McDonald against the Companies as a result of
8  McDonald's role as the Companies' creditor. No claims are asserted against Defendants, and
9  Defendants are not even parties to that litigation. (See #11, Exhibit B). Defendant also points to two
10 other lawsuits. (See #11 at 18–19). In the first of these lawsuits, Sharon Wishon, the receiver for MSI
11 Companies, has sued Palacios to recover money that he allegedly borrowed from MSI Companies.
12 (See #11, Exhibit C). In the second, Wishon, again as receiver for MSI Companies, has sued Nelson
13 to recover equipment and business records from Nelson under a theory of conversion of personal
14 property. (See #11, Exhibit D). Neither of these two cases indicate any significant overlap with the
15 present litigation, with respect to the claims asserted, or the parties involved. Compare Nakash, 882
16 F.2d at 1416–1417 (finding parallel proceedings where the parties were nearly identical, where the
17 plaintiff could easily have brought his claim as a cross-claim in state court, and where the federal
18 case was a minor issue encompassed within ongoing, comprehensive state court litigation).

19     Even if these cases were parallel proceedings, the Court would still be required to take into
20 account several factors before determining that abstention would be appropriate. Such factors
21 include: (1) whether either court has assumed jurisdiction over a res (usually meaning real property);
22 (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4)
23 the order in which the forums obtained jurisdiction, (5) whether state or federal law controls; and (6)
24 whether the state proceeding is adequate to protect the parties' rights. See id. (citations omitted).
25 Here, there is no res involved, and therefore no threat of inconsistent assertions of jurisdiction over
26 such property. See Colorado River, 424 U.S. at 813 ("It has been held, for example, that the court

first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts."). Next, the federal forum is a superior one, given that McDonald has asserted a federal claim under Section 10b of the Securities Exchange Act of 1934. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 (1983) ("[T]he presence of federal-law issues must always be a major consideration weighing against [abstention]."). While the prior cases were filed in state court before the present action was filed in federal court, the Court finds no concern regarding piecemeal litigation because the suits in state court have no bearing on Defendants' personal liability to McDonald based on their misrepresentations to him. Finally, because this claim would have to be brought as part of a separate proceeding, whether in state or federal court, abstention by this Court would lead to greater costs for the litigants, because they would be forced to begin the suit anew in state court. As such, the federal forum is the more convenient one in which to litigate McDonald's claims. The Court therefore finds no basis for abstaining from exercising its jurisdiction in this case.

**V. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendants Palacios and Nelson's Motion to Dismiss (#11) is **DENIED**.

DATED this 12th day of August 2010.

_____
Kent J. Dawson
United States District Judge