UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| THOMAS M. MCDONALD,<br><br>    Plaintiff,<br><br>v.<br><br>STEVEN C. PALACIOS, *et al*.,<br><br>    Defendants. | Case No. 2:09-CV-01470-KJD-PAL<br><br>**ORDER** |

      Before the Court is the Motion for Partial Summary Judgment of Plaintiff Thomas M. McDonald (#54). Defendants/Counterclaimants Steven C. Palacios, Palacios Family Trust Dated May 10, 2006, and Sarah Nelson ("Defendants") filed an Opposition and Countermotion for Summary Judgment (## 61, 63). Plaintiff McDonald filed his Reply in Support of Motion for Partial Summary Judgment and Opposition to Defendants' Motion for Partial Summary Judgment (#70). Defendants/Counterclaimants filed a Reply in Support of their Motion for Partial Summary Judgment (#71).

      Also before the Court is the Motion to Dismiss Complaint as it Relates to Third Party Defendant Leonard Krick (#58). Steven C. Palacios and the Palacios Family Trust Dated May 10, 2006, filed an opposition (#62) and Krick replied (#66).

      The Court rules on these Motions together herein.

I.  Background

On August 3, 2006, McDonald entered into an agreement with Defendants Steven Palacios ("Palacios") and the Palacios Family Trust dated May 10, 2006 ("Trust") to purchase 75% of the stock in various companies,[1] ("Companies") identified in a Stock Purchase Agreement for $2,925,000.00.  McDonald made a down payment of $1,150,000 and executed a Promissory Note in favor of the Trust for $1,775,000.00.  The Trust provided financial statements of the Companies and, as part of the Stock Purchase Agreement represented that the financial statements accurately reflected the financial state of the Companies.  Section 1.3 of the Stock Purchase Agreement provided that "the Buyer's liability for default shall be limited to the Seller's right to foreclose and recover the stock pledged herein."

On August 7, 2006, McDonald executed the Promissory Note agreeing to pay the Trust monthly installments in the amount of $26,789.51 for seven years on the 7th day of each month, beginning on September 7, 2006, with any remaining indebtedness due and payable on August 7, 2013.  The terms of the Promissory Note stated that:

> The indebtedness evidenced by this Note is secured by a Stock Pledge Agreement dated August 7, 2006. In the event of a default in payment of this Note during the first two years of the Note or for so long as Note Holder [the Trust] remains a shareholder of Mist Systems International, Inc., whichever is longer, the liability of Maker shall be limited to the stock pledged by Maker as security for this Note. In other words, for a default taking place during the above stated period the note obligation shall be non-recourse with respect to Maker's other assets.  For a default that takes place after the above stated period, the liability of Maker is unlimited.

McDonald also signed a Stock Pledge Agreement dated August 7, 2006 that mirrored the terms of the Promissory Note.  In the Stock Pledge Agreement, McDonald agreed to pay the purchase price of $2,925,000.00 to purchase 75% of the Trusts's common stock in the Companies.  Upon payment in full, the Trust agreed to transfer the stock to McDonald.  Section 5 of the Stock Pledge Agreement further provided:

---

1. The Companies are: Mist Systems International, Inc.; MSI Landscaping, Inc.; MSI Companies, Inc.; MSI Development, Inc. Pure Osmosis, Incorporated; MSI Concrete Services, Inc.; MSI Masonry Services, Inc.; Sonoran Companies, Inc.; and Pacific Sun Nurseries, Inc.

2

> For a default that takes place during the first two years following the closing of the Stock Purchase Agreement, or while the Pledgee remains a shareholder of Mist Systems International, Inc., whichever is longer, if the proceeds of any sale [of stock] are insufficient to cover the unpaid purchase price under the Stock Purchase Agreement plus expenses of the sale, the Pledgor [Mr. McDonald] shall be released of any further liability.

The Promissory Note is the only document to define "default." The Promissory Note states:

> In the event a monthly payment is not made, the monthly payment and interest thereon shall accrue. Accrued monthly payments shall be due on a quarterly basis. Failure to make payments under this note on at least a quarterly basis shall constitute a default and gives rise to the late charge and acceleration rights set forth below.

The parties also signed an Employment Agreement requiring Mr. Palacios to continue to act as president of Mist Systems International, Inc. ("MSI"), one of the Companies, for two years. The Employment Agreement provided that "The Board may terminate [Palacio's] employment with [MSI] at any time for 'cause' as defined below, immediately on written notice to [Palacio] of the circumstances leading to termination for cause." In the event that Palacio was terminated for cause as defined in the agreement, the parties agreed that "[Palacios] shall sell and [MSI] or the remaining shareholders shall buy all of [Palacio's] remaining stock in [MSI] upon [Palacio's] termination of employment." (Employment Agmt. ¶23.1.)

McDonald timely paid the Trust pursuant to the Promissory Note from September 2006 to April 2008. On May 24 2008, Palacios received his last paycheck from MSI and ceased working for MSI. On May 28, 2008, McDonald sent a letter to Palacios informing him that he would no longer make payments under the Note.

McDonald sued Palacios and the Trust for securities violations, fraud, and misrepresentation. He also seeks a declaratory judgment stating that he is not a stockholder in the Companies, that he has not been a stockholder since May 28, 2008, and that he has no obligation of any kind to Palacios or the Trust. Defendants responded to the complaint by filing a counterclaim against McDonald and seven Third Party Defendants alleging, *inter alia*, breach of contract by McDonald for failing to pay the Trust pursuant to the Promissory Note and Escrow Agreement and breach of an agreement for the purchase and sale of stock pursuant to Palacio's Employment Agreement.

McDonald has moved for summary judgment on his declaratory relief claim and on Palacios' and the Trusts's counterclaims relating to failure to pay pursuant to the Promissory Note and the Stock Purchase agreement. Palacios and the Trust have countermoved for summary judgment on breach of the agreement for purchase and sale of stock pursuant to the Employment Agreement.

II. Motions for Summary Judgment

    A. Legal Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

B.  Declaratory Relief Claim

In Nevada, "[t]he question of the interpretation of a contract when the facts are not in dispute is a question of law." Grand Hotel Gift Shop v. Granite St. Ins., 839 P.2d 599, 602 (Nev. 1992). There are two primary doctrines of contractual interpretation: (1) the court shall effectuate the intent of the parties determined in the light of the surrounding circumstances if not clear from the contract itself; and (2) ambiguities are to be construed against the party who drafted the agreement. See Musser v. Bank of America, 964 P.2d 51, 52 (Nev. 1998). However, "a contract that is clear on its face from the written language . . . should be enforced as written." Canfora v. Coast Hotels & Casinos, Inc., 121 P.3d 599, 603 (Nev. 2005). Furthermore, "[e]very word must be given effect if at all possible." Id. at 54, (quoting Royal Indem. Co. v. Special Serv., 413 P.2d 500, 502 (Nev. 1966)).

The contract, signed in August 2006, is unambiguous in its provision that McDonald's liability for default during the first two years of the note or for as long as the Trust was a shareholder of MSI was limited to the stock McDonald had purchased. The dispute between the parties is whether the default took place during the period. McDonald seeks a declaration from this Court that he is not and has not been a stockholder since May 28, 2008 and that Defendants do not have any obligations pursuant to the agreements entered into by the parties.

Defendants first argue that, although McDonald stopped paying in May of 2008, he was not in default until October 2008, more than two years after the agreement was signed. Defendants argue that the provision in the Promissory Note defines default as "failure to make payments on at least a quarterly basis." According to Defendants, McDonald made payments in the first and second quarters of calendar year 2008, and was not in default until the end of the third quarter of 2008, or October 2008. Plaintiffs argue that under the plain and ordinary meaning of "quarter," a default

5

occurred when payment was not made for three consecutive months.  Since McDonald stopped paying in May, on July 7, 2008 he was in default.

In the absence of clear evidence of a different intention, words must be presumed to have been used in their ordinary sense, and given the meaning usually and ordinarily attributed to them. Reno Club v. Young Inv. Co., 64 Nev. 312, 323, 182 P.2d 1011, 1016 (Nev.1947) See also Traffic Control Servs. v. United Rentals, 120 Nev. 168, 174, 87 P.3d 1054 (2004) (Contractual terms are given their plain and ordinary meaning.)  Black's Law Dictionary defines "quarterly" as "Quarter yearly; once in a quarter year."  Black's Law Dictionary, 6th Ed. (1991).  Defendants argue for an interpretation that "as it pertains to the calendar year, Mr. McDonald made payments in the first and second quarters."  (Opp. and Countermotion #61 at 10.)  The phrase "calendar year" does not appear in the Promissory Note and there is no indication that the parties meant quarterly in any other sense but "once in a quarter year."  This Court will not "create an ambiguity where none exists."  See Conrad v. Ace Property & Cas. Ins. Co., 532 F.3d 1000, 1005 (9th Cir. 2008).  McDonald stopped paying in May 2008 and by July 2008– less than two years after the agreement was signed– he had defaulted as defined in the Promissory Note.

According to the terms of the agreement, Defendants have no recourse against McDonald's assets other than the stock pledged in this transaction and McDonald has no further liability under the Stock Purchase Agreement, the Stock Pledge Agreement, or the Promissory Note.  Plaintiff also seeks declaratory relief that McDonald is not a stockholder of the Companies and that he has not been a stockholder since May 28, 2008.  It is clear from the record that McDonald resigned and notified Defendants of his intention to cease paying on the note on May 28, 2008.  However, there is no evidence of whether and when the stock was transferred back to Defendants.  Accordingly, the Court grants declaratory relief only as to McDonald's lack of further liability under the Stock Purchase Agreement, the Stock Pledge Agreement, and the Promissory Note.

Summary judgment is also granted against Defendants on the Third and Ninth causes of action of Defendants' Counterclaim since they are based on breach of contract for failure to pay for the stock pursuant to Promissory Note and the Stock Purchase Agreement.

### C.  Claim for Breach of Guarantee

Defendant Palacio's counterclaim states a cause of action for Breach of Guarantee.  Palacios argues that summary judgment is appropriate on his counterclaim because he was "constructively terminated" when MSI stopped paying him.  (Opp. and Countermotion #61 at 10.)  According to Palacios, this triggered the Employment Agreement's provision requiring McDonald to purchase the remaining 25% of stock.

Plaintiff argues that Defendants have provided no evidence that his termination was for "cause" as outlined in the Employment Agreement.  The Agreement itself requires written notice of action from the Board if a termination for "cause" takes place and further defines "cause" in a separate paragraph.  According to Plaintiff, Palacios was not terminated for cause, but simply lost his job when MSI ceased to operate.  Plaintiff points to an unemployment benefits form filled out by Palacios indicating that the business had been closed down.  Plaintiff argues that no obligation to purchase stock exists under the Employment Agreement since Palacios was not terminated for cause.  There is at the very least a dispute of fact about whether Palacios was terminated for cause.  Accordingly, summary judgment on the Breach of Guarantee claim is inappropriate and Defendants' Motion is denied.

## IV. Motion to Dismiss

### A.  Legal Standard for Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation

of the elements of a cause of action." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." Twombly, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (internal citation omitted).

In Iqbal, the Supreme Court recently clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the Court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. Id. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. Id. at 1949. Second, the Court must consider whether the factual allegations in the complaint allege a plausible claim for relief. Id. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." Id. (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's complaint must be dismissed. Twombly, 550 U.S. at 570.

B.  Motion to Dismiss Complaint as it Relates to Third Party Defendant Leonard Krick

Defendants Palacios and Trust, as Third-Party Plaintiffs, allege in their Third Party Complaint five causes of action against Krick and the company that he was previously affiliated with, United Business Brokers of Nevada, LLC ("UBB"). Specifically, Krick is named in the Twelfth Cause of Action alleging Breach of Contract, the Thirteenth Cause of Action alleging Unjust Enrichment, the Fourteenth Cause of Action alleging Breach of the Covenant of Good Faith and Fair Dealing, the Fifteenth Cause of Action alleging Breach of Fiduciary Duty, the Sixteenth Cause of Action for Negligence Per Se for Violation of NRS §90.310 and the Eighteenth Cause of Action for Negligence.

### 1. Twelfth Cause of Action

Defendants seek recovery against Krick and UBB for breach of an agreement between Defendants and Krick and UBB. Specifically, the complaint alleges that "UBB and Mr. Krick breached this agreement by receiving and accepting more compensation than they were entitled to under the agreement." (Third-Pty Compl. ¶ 93.) There is no allegation that the contract provided for a specific amount to be paid. No statement indicates the amount that Krick and UBB were actually paid. Since they were party to the agreement, Defendants likely possess knowledge as to the amount that Krick and UBB were paid, but instead assert nothing more than conclusory statements claiming liablity. Such statements are insufficient to survive dismissal under Fed. R. Civ. P. 12(b)(6) and Twombly.

### 2. Thirteenth Cause of Action

Defendants assert a claim for Unjust Enrichment against Krick and UBB. This claim is simply a follow-up to the twelfth cause of action and similarly fails to state a claim that rises above the speculative level. Twombly, 550 U.S. at 555. This claim is dismissed.

### 3. Fourteenth Cause of Action

Defendants' claim for breach of the Implied Covenant of Good Faith and Fair Dealing is dependant on the already dismissed contractual claims. Accordingly, it is also dismissed.

### 4. Fifteenth Cause of Action

The Fifteenth Cause of Action alleges a breach of fiduciary duty. Defendants allege that "UBB and Mr. Krick, and each of them, owed Third-Party Plaintiffs a special duty as they were a fiduciary [sic] of Third-Party Plaintiffs." (Third-Pty Compl. ¶ 107.) Under Nevada law, a fiduciary relationship exists when one has the right to expect trust and confidence in the integrity and fidelity of another." See Powers v. United Servs. Auto Ass'n, 114 Nev. 690, 700, 962 P.2d 596, 700 (1998). Defendants fail to allege a specialized position, fail to set forth specific facts showing a breach of fiduciary duty, and simply set forth legal conclusions that they are entitled to relief against UBB and Krick. Because this claim fails to state a cause of action against Krick and UBB it is dismissed.

### 5. Sixteenth Cause of Action

The Sixteenth Cause of Action is based upon negligence *per se* arising from a supposed violation of the requirement in NRS §90.310 that broker-dealers and sales representatives transacting business in Nevada be licensed. Defendants have alleged some of the elements of the cause of action they assert. Specifically they allege that UBB and Krick were not licensed when they brokered the sale of the Companies and therefore violated the statute, that they are in the class of persons that the statute was designed to protect, and that they suffered damages of the type that the statute was intended to prevent. However, the Defendants have not set forth any facts showing that the violation of NRS §90.310 legally caused the injury they suffered. See Anderson v. Baltrusaitis, 113 Nev. 963, 944 (Nev. 1997). This claim for relief is insufficiently pled. Accordingly, it is dismissed.

### 6. Eighteenth Cause of Action

Defendants' attempt to state a cause of action for negligence against Krick and UBB averring that Krick and UBB owed a duty and then stating the conclusory allegation that "Third Party Defendants [sic], and each of them, have failed miserably and breached this duty to the detriment of the Third Party Plaintiffs." (Third-Pty Compl. ¶ 128.) This statement provides no facts indicating how Krick and UBB were negligent or how their actions caused the alleged harm to the Defendants. This cause of action also fails to state a claim for relief under Twombly.

Defendants have failed to adequately plead any causes of action against Krick and UBB. Accordingly, the claims against Krick and UBB are dismissed.

## V. Conclusion

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (#54) is **GRANTED** .

**IT IS FURTHER ORDERED** that Summary Judgment on Plaintiff's Sixth cause of action for Declaratory Relief is **GRANTED IN PART** as stated herein.

**IT IS FURTHER ORDERED** that the Third and Ninth causes of action of Defendants' Counterclaim are **DISMISSED** with prejudice.

1    **IT IS FURTHER ORDERED** that Defendants' Countermotion for Summary Judgment (#63) is **DENIED**.

**IT IS FURTHER ORDERED** that Motion to Dismiss Complaint as it Relates to Third Party Defendant Leonard Krick (#58) is **GRANTED**.

DATED this 27th day of September 2011.

_____
Kent J. Dawson
United States District Judge